UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

COLIN ROBINSON,

                              Plaintiff,

        -against-

ROBERT MOORE, Managing Editor, *New York
Daily News*, and COL ALLAN, Managing Editor,
*New York Post*,

                              Defendants.

-----------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ JUL 2 4 2013 ★

BROOKLYN OFFICE

**MEMORANDUM AND ORDER**

13-CV-3539 (SLT) (LB)

**TOWNES, United States District Judge:**

Plaintiff Colin Robinson, proceeding *pro se*, brings this action for injunctive relief against

Robert Moore and Col Allan, who are alleged to be the Managing Editors of the *New York Daily*

*News* and the *New York Post*, respectively. Although plaintiff has paid the requisite filing fee to

commence this action, the action is dismissed for the reasons set forth below.

## *BACKGROUND*

On June 24, 2013, plaintiff commenced this action by filing a handwritten complaint and

by paying the filing fee. That complaint alleges that plaintiff has been reading the *New York*

*Daily News* and the *New York Post* (collectively, the "Newspapers") "[f]or many years," and has

"observe[d] some similarity between people[,] places and events that [he has] encountered, and

those reported in the Daily News and the New York Post." Complaint at 3.[1]  Since 2005,

plaintiff has been "requesting an appointment with the management of these two institutions to

receive information about this subject[,] . . . such as an intelligent reason for this issue." *Id.* The

---

[1] Although the first eight pages of the complaint are numbered, there are several
handwritten pages and other documents attached to these eight pages. Since most of these
attachments are not numbered, this Court will use the numbers assigned to the pages by the
Court's electronic case filing system when citing to the pleading.

complaint does not specifically describe the "subject" or "issue" which plaintiff wishes to discuss with the Newspapers' management. However, the complaint does allege that plaintiff has "requested information about this subject from [his] representative in Congress," who told him "that this issue is stalking." *Id.* at 4. The complaint defines "stalking" as "an unwarranted intrusion on someone['s] privacy." *Id.*

Plaintiff has attached to his complaint copies of three letters which plaintiff sent to the managing editors of the Newspapers. Each of these letters is addressed to a different managing editor: one is addressed to each of the defendants and the third is addressed to Stuart Marques, who preceded defendant Moore as managing editor of the *Daily News*. However, all of the letters are otherwise identical. They state:

> Dear Sir
>
> There are a number of individuals that are involved in an issue intended to serve some importance to the [A]merican society. This issue result[s] in serious problems for the [A]merican society.
>
> This is because some of these individuals are criminals. These are people that cannot be trusted to do what is right when there is a problem that is to be resolved. This issue does not accomplish any good for the [A]merican society. There is a great need to make some changes to this subject.
>
> This problem came about because of an issue between the management of the Daily News and the New York Post and Mr. Colin Robinson.
>
> I am requesting an appointment with the management of the [Newspaper] to receive information about this subject. I am requesting this information to decide what changes is [*sic*] to be made to this subject. Thank you for your cooperation.
>
> Yours Truely [*sic*]
> Colin Robinson

2

While all of the letters are undated, plaintiff has attached to his complaint additional exhibits which state that copies of this letter were sent to defendant Allan via certified mail on May 16, 2011, June 9, 2011, and December 17, 2012, and that a copy of this letter was sent to defendant Moore via certified mail in December 2012.

Plaintiff did not receive a response to any of his letters. Complaint at 3. According to the complaint, the defendants' failure to respond confirms "the existence of this issue." *Id.* However, the complaint does not allege that defendants are themselves involved in any criminality. Rather, it specifically states that they are "without means to resolve[] crimes committed by individuals that are involved in this issue." *Id.* at 7.

The complaint alleges that this "issue is a threat to the life of . . . plaintiff because he play[s] a central role in this subject" as well as "a threat to the lives of people in positions of responsibility that permitted it." *Id.* at 6-7. In addition, the complaint alleges that "a number of [A]mericans . . . have used this issue as a basic [*sic*] to aquire [*sic*] resources." *Id.* at 5. Accordingly, the complaint requests that this Court "issue an injunction, forclosing [*sic*] this subject." *Id.* at 8. The complaint does not seek any other relief.

The complaint also does not specifically allege a basis for subject-matter jurisdiction. One of the handwritten documents attached to the complaint alludes to "Federal law making this case the responsibility of the Federal Court," but does not cite to any particular law. Complaint at 13. That same document asserts that the Newspapers are "regulated by the Federal Communications Commission[,] . . . an agency of the Federal Government," *id.*, but nothing in the complaint or in any of the attachments thereto suggests that defendants have violated any regulations. In addition, documents attached to the complaint allege, without citing to any

3

authority, that plaintiff "made the US Government a factor in this subject" by requesting "information about this subject" from his Congressman, *id.* at 9-10; that "[t]his subject is in regards to an issue which the U.S. Government has a responsibility to maintain an interest in," *id.* at 10; and that "this subject is being taken to Court" because it "needs to be approve [*sic*] by the Federal Government." *Id.* at 13.

## *DISCUSSION*

In reviewing Plaintiff's complaint, the Court is mindful that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

Notwithstanding the foregoing, this Court must *sua sponte* dismiss *pro se* complaints under certain circumstances, even when the plaintiff has paid the filing fee. *See Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363 (2d Cir.2000); *see also Mallard v. United States District Court*, 490 U.S. 296, 307-08 (1989). Title 28, section 1915(e)(2), of the United States Code dictates that "[n]otwithstanding any filing fee . . . that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

4

monetary relief against a defendant who is immune from such relief." An action is frivolous as a matter of law when, *inter alia*, it is based on an "indisputably meritless legal theory" – that is, when it "lacks an arguable basis in law . . , or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir.1998).

In addition, a court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3). Federal courts have an independent obligation to examine the basis of their jurisdiction. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). A plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject-matter jurisdiction over the action. *See, e.g., Rene v. Citibank NA*, 32 F. Supp. 2d 539, 541-42 (E.D.N.Y. 1999). Federal subject-matter jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when plaintiffs and defendants have complete diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "Federal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." *State of New York v. White*, 528 F.2d 336, 338 (2d Cir. 1975). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) (citations omitted).

In this case, the complaint does not suggest a basis for federal jurisdiction. First, the complaint specifically alleges that plaintiff and the two defendants are New York citizens. Complaint at 1. Accordingly, this Court does not have diversity jurisdiction under 28 U.S.C. § 1332.

5

Second, nothing in the complaint suggests a basis for federal question jurisdiction. The complaint alleges only that the defendants failed to respond to plaintiff's letters requesting "an appointment with the management" of the defendants' newspapers or to provide certain information to plaintiff. Although the complaint alludes to "Federal law" and alleges that Newspapers are regulated by the Federal Communications Commission, this Court is unaware of any federal law or regulation that would compel these private individuals to meet with plaintiff or to provide him with any information.

To the contrary, the Court is aware of law restricting the Court's ability to interfere with the Newspapers' operations or to order the Newspapers to divulge information. The First Amendment of the United States Constitution "jealously protects" journalistic freedom. *Alliance for Open Society Int'l., Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 246-47 (2d Cir. 2011). Accordingly, the Second Circuit has "long recognized a qualified evidentiary privilege for information gathered in a journalistic investigation." *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011) (citing *Gonzales v. Nat'l Broadcasting Co.*, 194 F.3d 29 (2d Cir. 1999); *In re Petroleum Prods. Antitrust Litig. (Petroleum Prods.)*, 680 F.2d 5, 7–8 (2d Cir. 1982); and *Baker v. F & F Inv.*, 470 F.2d 778 (2d Cir.1972)). "The privilege for such information is intended to protect the public's interest in being informed by 'a vigorous, aggressive and independent press,' by limiting the circumstances in which litigants may obtain access to press files through court-ordered discovery." *Id.* at 306-07 (quoting *von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987)).

Plaintiff's complaint not only fails to allege a basis for subject-matter jurisdiction, but also fails to state a claim on which the injunctive relief plaintiff seeks may be granted. Construed

6

liberally, the complaint implies that Newspaper personnel have engaged in "stalking" or other criminal activity. However, this Court does not have the power to investigate or prosecute criminal activity. "[C]riminal prosecutions are within the exclusive province of the public prosecutor, who has complete discretion over the decision to initiate, continue or cease prosecution." *Solomon v. H.P. Action Center, H.P.D.*, No. 99 Civ. 10352 (JSR), 1999 WL 1051092, at *1 (S.D.N.Y. Nov. 19, 1999). Moreover, "[a] private citizen does not have a constitutional right to . . . compel the initiation of criminal proceedings." *Lis v. Leahy*, No. CIV-90-834E, 1991 WL 99060 at *1 (W.D.N.Y. June 3, 1991); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another"). Accordingly, to the extent that plaintiff has evidence that the Newspapers have engaged in illegal activity, his only recourse is to report that activity to law enforcement personnel.

Furthermore, this Court notes that this lawsuit is brought only against two individuals: defendants Moore and Allan. Yet, the complaint does not allege that these defendants are involved in any criminality, but expressly alleges that they are "without means to resolve[] crimes committed by individuals that are involved in this issue." Complaint at 7. Accordingly, even if this Court were to grant an injunction directing the defendants to take action or to refrain from taking certain action, that injunction would not serve to prevent the criminal activity.

## *CONCLUSION*

For the reasons set forth above, this action is dismissed for lack of subject-matter jurisdiction and for failure to state a claim on which relief may be granted. Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1915(e)(2). Since there is no indication that a valid claim might be stated,

7

there is no need to grant leave to amend the complaint. *See Cuoco*, 222 F.3d at 112; *Gomez*, 171 F.3d at 795. The Clerk of Court shall enter judgment in accordance with this Memorandum and Order and close this case. Although plaintiff has paid the filing fee to initiate this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

/s/(SLT)

/SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
July **22** , 2013

8